## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD FREDERICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 14 -cv- 00302 (TSC) |
| | ) |
| ANDREA HILLYER, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Richard Frederick is a citizen of St. Lucia and a member of the St. Lucian parliament. He brings claims against American consular officials, a retired FBI employee, and a St. Lucian security officer arising out of an alleged conspiracy to revoke his visas to travel to the United States. Plaintiff bases his claims on a private right of action embodied in recently repealed regulations authorized by a statute repealed decades ago.

Pending before the Court are two dispositive motions challenging Counts I, II, and III of Plaintiff's First Amended Complaint.[1] The first motion was filed by the United States, and is captioned Statement of Interest, Motion to Substitute Itself as a Defendant, and Motion to Dismiss the Complaint (the "Government's Motion"). The Government's Motion relates to Defendants Andrea Hillyer and Eugene Sweeney. The other motion is Defendant Susan Chainer's Motion to Dismiss the Complaint

---

[1] Pursuant to the Court's October 29, 2014 Order Vacating Order to Show Cause (ECF No. 26), Mr. Frederick's First Amended Complaint (ECF No. 23), filed after the pending dispositive motions, is the operative pleading against which the Court evaluates the motions. In his First Amended Complaint, Mr. Frederick added Counts IV and V, which involve only Defendants Susan Chainer and George Deterville.

The Government's Motion argues that no law authorizes Frederick's suit and it therefore must be dismissed for failure to state a claim, or in the alternative, that the United States must be substituted for Hillyer and Sweeney and the claims against it must then be dismissed for failure to exhaust administrative remedies and because Frederick's claim arose in a foreign country. Chainer seeks dismissal of Frederick's claims against her for failure to state a claim, lack of personal jurisdiction, and improper venue.  For the following reasons, the Court finds that it lacks subject matter jurisdiction to consider Counts I, II, and III and dismisses those Counts. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Frederick's remaining Counts IV and V and those counts are dismissed without prejudice.

## I.    LEGAL STANDARD

Defendants have styled and briefed their motions as made under Rule 12(b)(6) for failure to state a claim.  Because the Government's motion argues that there is no federal cause of action authorizing Plaintiff's claim, it is more appropriately considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  A court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 when the face of the Complaint "establishes either that federal law creates the cause of action or that the Plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983).

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" *Am. Nat'l Ins. Co. v. F.D.I.C.,* 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi,* 394 F.3d

2

970, 972 (D.C. Cir. 2005)).  Nevertheless, "'the court need not accept factual inferences drawn

by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the

Court accept plaintiff's legal conclusions.'"  *Disner v. United States,* 888 F. Supp. 2d 83, 87

(D.D.C. 2012) (quoting *Speelman v. United States,* 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).

The Court is obligated to consider its own subject matter jurisdiction *sua sponte* if necessary.

*NetworkIP, LLC v. F.C.C.*, 548 F.3d 116, 120 (D.C. Cir. 2008).  When the absence of subject

matter jurisdiction is obvious, the Court must dismiss at any time, including before service of all

defendants.  *Caldwell v. Kagan*, 777 F. Supp. 2d 177, 179 (D.D.C. 2011).

## II.   ANALYSIS

### A.  Plaintiff's Allegations

Plaintiff alleges the following facts, which the Court will accept as true for purposes of

this motion.  Plaintiff is a citizen of Saint Lucia, an attorney, and a member of the House of

Assembly, the Saint Lucian parliament, since 2006.  (First Am. Compl. ¶¶ 1-2, 16).  Defendant

Hillyer is a United States citizen and at all relevant times was employed by the U.S. Department

of State as a consular officer in the United States Embassy to Barbados and the Eastern

Caribbean, located in Bridgetown, Barbados ("Bridgetown Embassy").  (*Id.* ¶ 3).  Saint Lucia,

which does not have its own U.S. embassy, is served by the Bridgetown Embassy.  (*Id.* ¶ 9).

Defendant Chainer is a U.S. citizen and "was employed as a legal attaché stationed at the

[Bridgetown Embassy] between 2001 and 2007," although she allegedly maintained "contacts

and influence" at the Bridgetown Embassy thereafter.  (*Id.* ¶¶ 4, 72).  Defendant Sweeney is also

a U.S. citizen, was the Consul General at the Bridgetown Embassy in August 2011, and at all

relevant times was an employee of the U.S. State Department.  (*Id.* ¶ 5).  Defendant George

Deterville is a citizen of Saint Lucia and serves as the head of the security detail for the Prime

Minister of Saint Lucia.  (*Id.* ¶ 6).  Defendant John Doe 1 is the consular officer who in 2011

revoked Plaintiff's B1/B2 and A1 diplomatic visas.  (*Id.* ¶ 7).  Defendant John Doe 2 is the

consular officer assigned to review Plaintiff's immigrant visa application and who rejected that

application on October 31, 2012.  (*Id.* ¶ 8).  At all relevant times, Doe 1 and Doe 2 were

employees of the U.S. State Department.  (*Id.* ¶¶ 7-8).

Plaintiff was issued a United States B1/B2 visa in 1984, which the United States

repeatedly reissued.  (*Id.* ¶¶ 40-42).  He obtained a diplomatic passport accompanied by an A1

diplomatic visa in January of 2007.  (*Id.* ¶ 43).  Three months prior to the Saint Lucian General

Elections of November 2011, he received a telephone call from a Bridgetown U.S. Embassy

official identifying himself as Tom Broughton, who informed Plaintiff that his B1/B2 and A1

diplomatic visas had been revoked.  (*Id.* ¶ 47).  When Plaintiff inquired of the reason for

revocation, Broughton stated it was because of "new information that came to hand" and, when

Plaintiff pushed further, Broughton replied he was "not at liberty" to provide a substantive

reason for revocation.  (*Id.* ¶¶ 47–48).  Frederick alleges the revocations, which should have been

confidential, were leaked to the press and public.  (*Id.* ¶ 50).  Given that travel to the U.S. is seen

by Saint Lucian citizens as essential to holding government office, Frederick's political

opponents used the visa revocations and attendant speculation about illegal conduct leading to

the revocation against him in the November 2011 election.  (*Id.* ¶¶ 51–56).  Frederick claims that

the political fallout of his visa revocations forced him to resign his position as Minister for

Housing, Urban Renewal and Local Government in September 2011, although he was re-elected

to his seat in the House of Assembly in November 2011.  (*Id.* ¶ 57).  Frederick alleges that "[i]t

is widely believed" that his political party lost its parliamentary majority in that election due to the visa revocations scandal.  (*Id.* ¶ 61).  Frederick made several unsuccessful attempts to obtain an official reason for his visa revocations.  (*Id.* ¶ 63).

Sometime in 2009 or 2010, prior to the revocation of his visas, Frederick's daughter, a U.S. citizen, filed a petition for an immigrant visa on his behalf so that he could travel, live, and work freely in the U.S. without need for further visas.  (*Id.* ¶¶ 65-66).  Frederick was interviewed by U.S. Embassy officials on October 9, 2012, and subsequently informed that his application had been denied by letter dated October 31, 2012 from the Bridgetown Embassy.

Frederick alleges that "Defendant Chainer, at Defendant Deterville's urging, conspired with United States Embassy Officials, including Defendants Hillyer, Sweeney, and Doe 1 to create a false and improper basis for revoking Frederick's visas, and then to revoke those visas to cause political embarrassment to Frederick for the political gain of the [opposing political party] and Deterville."  (*Id.* ¶ 73).  In Count I, Mr. Frederick alleges violations of 22 C.F.R. § 13.3 and 22 U.S.C. § 3926 by  Hillyer, acting at the behest of Chainer, and by John Doe 1, acting at the behest of Chainer and Hillyer, in revoking Frederick's B1/B2 and A1 diplomatic visas.  (Compl. ¶¶ 82–87).  22 C.F.R. § 13.3 was a State Department regulation, now repealed, providing for liability by consular officers for certain actions.  22 U.S.C. § 3926 authorizes the Secretary of State to prescribe regulations for carrying out functions of the Foreign Service and to delegate those functions to others at the Department of State.  In Count II, Frederick alleges violations of 22 C.F.R. § 13.3 and 22 U.S.C. § 3926 by John Doe 2 in denying Frederick's immigrant visa. (*Id.* ¶¶ 88–91).  In Count III, Frederick alleges a conspiracy to violate 22 C.F.R. § 13.3 and 22 U.S.C. § 3926 by Hillyer, Chainer, Sweeney, Deterville, John Doe 1, John Doe 2, "and other

Unnamed Co-conspirators within the [Saint Lucia Labor Party] and at the State Department headquarters in Washington, D.C" regarding revocation of Frederick's B1/B2 and A1 diplomatic visas and denial of his immigrant visa.  (Compl. ¶¶ 92-99).  Frederick's Counts IV and V assert claims for defamation and conspiracy to defame, respectively.

**B.  22 C.F.R. § 13.3**

In July 2014, after Frederick filed this suit but before he filed his First Amended Complaint, the State Department repealed 22 C.F.R. § 13.3, the regulation upon which Frederick bases his first three counts.[2]

Prior to its repeal, 22 C.F.R. § 13.3 was captioned "Liability for neglect of duty or for malfeasance generally; action on bond; penalty."  It stated:

> Whenever any consular officer willfully neglects or omits to perform seasonably any duty imposed upon him or her by law, or by any order or instruction made or given in pursuance of law, or is guilty of any willful malfeasance or abuse of power, or of any corrupt conduct in his or her office, he or she shall be liable to all persons injured by any such neglect, or omission, malfeasance, abuse, or corrupt conduct, for all damages, occasioned thereby; and for all such damages, he or she and his or her sureties upon his or her official bond shall be responsible thereon to the full amount of the penalty thereof to be sued in the name of the United States for the use of the person injured. Such suit, however, shall in no case prejudice, but shall be held in entire subordination to the interests, claims, and demands of the United States, as against any officer, under such bond, for every willful act of malfeasance or corrupt conduct in his or her office. . . . (22 U.S.C. 1199).

22 C.F.R. § 13.3, *repealed by* 79 Fed. Reg. 43,246.

"Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."  *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577

---

[2] *See* Personnel; Changes in Statutory Authority; Technical Corrections; Liability for Neglect of Duty or for Malfeasance Generally; Repeal of Regulation, 79 Fed. Reg. 43,246 (July 25, 2014).

n.18 (1979)). "[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Id*. Congress repealed the statute imposing personal liability on consular officers for their official duties in 1977 specifically to preclude such suits,[3] leaving no doubt that there is no authorized cause of action. Frederick's contention that "the regulation has created an <u>express</u> cause of action" (Opp'n 10–11 (emphasis in original)) is entirely without legal support and contravenes Supreme Court authority.

To the extent Frederick alleges in Count III a "[c]onspiracy to violate . . . 22 C.F.R. § 13.3," that claim also fails. "Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983). The "wrongful act" or tort that Frederick alleges was the object of the conspiracy is the revocation of his B1/B2 and A1 diplomatic visas and the denial of his immigrant visa application. (Compl. ¶ 93). Because 22 C.F.R. § 13.3 cannot create *any* private cause of action, let alone a private tort action for this alleged wrongful conduct, Frederick's Count III claim of a conspiracy to violate that regulation must be dismissed. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (IDEA did not authorize an independent cause of action to collect interest on voluntarily-paid fees and therefore Court lacked subject matter jurisdiction).

---

[3] The Federal Register reflects that the State Department repealed 22 C.F.R. § 13.3 because the rule's authorizing statute, 22 U.S.C. § 1199, "was repealed in 1977, and the legislative history for the repeal of Section 1199 reflected a desire by Congress to treat consular officers the same as other federal employees with respect to personal liability for acts taken within the scope of their official duties." 79 Fed. Reg. 43,246, 43,246 (citing Foreign Relations Authorization Act, Fiscal Year 1978, Public Law 95-105, title I, § 111, 91 Stat. 848 (1977); H.R. Rep. No. 95-231, at 17, 21 (1977); H.R. Rep. No. 95-537 at 33 (1977) (Conf. Rep.)). The language of 22 C.F.R. § 13.3 was nearly identical to that of 22 U.S.C. § 1199, which the regulation cited.

### C.  22 U.S.C. § 3926

Frederick cites 22 U.S.C. § 3926 as the basis for his cause of action for Counts I, II, and

III.  That statute states, in its entirety:

> (a)  The Secretary may prescribe such regulations as the Secretary deems appropriate to carry out functions under this chapter.

> (b)  The Secretary may delegate functions under this chapter which are vested in the Secretary to any employee of the Department or any member of the Service.

22 U.S.C. § 3926.

"Like substantive federal law itself, private rights of action to enforce federal law must be

created by Congress."  *Alexander*, 532 U.S. at 286 (citing *Touche Ross*, 442 U.S. at 578).  "The

judicial task is to interpret the statute Congress has passed to determine whether it displays an

intent to create not just a private right but also a private remedy."  *Alexander*, 532 U.S. at 286;

*see also Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979).  Congress could

not have intended to create a private cause of action or a private remedy against individual

consular officers, foreign nationals, or any person, by enacting a statute that merely enables the

Secretary of State to implement regulations and delegate his or her statutory authority.

"Raising up causes of action where a statute has not created them may be a proper

function for common-law courts, but not for federal tribunals."  *Sandoval*, 532 U.S. at 287

(citation and internal quotation marks omitted).  This Court has emphasized that in *Sandoval*, the

Supreme Court made "very clear that courts cannot read into statutes a cause of action that has

no basis in the statutory text."  *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F.

Supp. 2d 20, 33 (D.D.C. 2002) (citing *Sandoval*, 532 U.S. at 286–87 ("Statutory intent on this

latter point is determinative . . . .  Without it, a cause of action does not exist and courts may not

create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.") (internal citations omitted)).  The *Sandoval* Court rejected any attempt to "revert in this case to the understanding of private causes of action that held sway 40 years ago" that would allow courts to venture beyond Congressional intent and imply a cause of action simply because one was consistent with the purpose of the statute at issue.  *Sandoval*, 532 U.S. at 287.

"The express inclusion in some statutes of language granting private parties a right to sue certainly suggests that Congress did not intend for such a right to be implied in the absence of express authorization."  *Bauer v. Marmara*, 774 F.3d 1026, 1033 (D.C. Cir. 2014).  "As the Supreme Court has reminded us, courts must be 'particularly wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs' because of the 'potential implications for the foreign relations of the United States.'"  *Id.* (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004)); *see also Smith v. Reagan*, 844 F.2d 195, 201 (4th Cir. 1988) (courts should be wary of "tread[ing] on matters of foreign policy which have long been recognized as the exclusive province of the political branches," and courts "must be especially certain of congressional intent before inferring a private cause of action" in the realm of foreign affairs).

Frederick attempts to invoke 22 U.S.C. § 3926 to hold State Department officials, a retired Federal Bureau of Investigation employee, and a foreign national personally liable for allegedly orchestrating the revocation of his visas and denial of his immigrant visa application.  "[T]he Supreme Court's standard is now clear: this Court cannot read into a statute a cause of action that Congress has not expressly created."  *Judicial Watch*, 219 F. Supp. 2d at 34 (citing *Sandoval*, 532 U.S. at 286).  Here, Congress long ago repealed 22 U.S.C. § 1199, the statute

expressly authorizing the cause of action that Frederick now attempts to bring, at least insofar as

he sues consular officers.  The statute under which Frederick does sue – 22 U.S.C. § 3926 – does

not create any private cause of action or remedy, and the Court cannot now infer in it the cause

of action that Congress long ago repealed.  Nor can the Secretary of State, through the authority

delegated to him or her under 22 U.S.C. § 3926, create a cause of action that Congress has not.

Therefore, Counts I and II, insofar as they are predicated upon 22 U.S.C. § 3926 as a cause of

action, must be dismissed.

Lastly, Frederick's Count III claim of a "[c]onspiracy to violate . . . 22 U.S.C. § 3926"

must also be dismissed.  Again, Frederick alleges that the visa actions were the wrongful acts

forming the object of the conspiracy.  Because 22 U.S.C. § 3926 does not create *any* private

cause of action, let alone a private tort action for visa revocations or denials, Frederick's Count

III claim of a conspiracy to violate that statute must be dismissed.

### D.  Counts I, II, and III Must be Dismissed in their Entirety

Counts I, II, and III have no basis in federal law and for that reason must be dismissed. In

light of the Court's authority to consider its own subject matter jurisdiction and dismiss on its

own motion, the Court will dismiss those Claims against all defendants, including the John Doe

Defendants and the as-yet-unserved Deterville.  *Caldwell*, 777 F. Supp. 2d at 179

### E.  Counts IV and V

Frederick invokes this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331

with respect to his first three counts.  He invokes this Court's supplemental jurisdiction pursuant

to 28 U.S.C. § 1367(a) to add Count IV, for defamation, and Count V, for conspiracy to defame.

The supplemental jurisdiction statute confers on the district courts, "in any civil action of which the district courts have original jurisdiction, . . . supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* § 1367(a).

The supplemental jurisdiction statute further provides that [t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. 1367(c)(3).  Because the Court now dismisses Frederick's first three counts, for which he invoked this Court's original federal question jurisdiction, it declines to exercise supplemental jurisdiction over Counts IV and V.[4]  The Court therefore dismisses Counts IV and V without prejudice to allow Plaintiff to file them in a proper forum.

## III.   CONCLUSION

For the reasons stated above, the Court grants the Government's Motion (ECF 17), grants Chainer's Motion (ECF 20), and dismisses Counts I, II, and III for lack of subject matter jurisdiction.  Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining Counts IV and V and dismisses them without prejudice.

---

[4] *See, e.g.*, *Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 227 (D.D.C. 2012); *Duke v. Absentee Shawnee Tribe of Okla. Housing Auth.*, 199 F.3d 1123, 1123 (10th Cir.1999) (affirming dismissal of federal claims for lack of jurisdiction and subsequent dismissal of state claims under § 1367(c)); *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1473 n.18 (11th Cir.1997) ("Because the district court did not have subject matter jurisdiction over the federal claim, we also hold that the district court properly declined to exercise supplemental jurisdiction over this state law claim [under] 28 U.S.C. § 1367(c)(3)."); *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir.1997) (same); *Logan v. Lillie*, 965 F.Supp. 695, 700 (E.D.Pa. 1997) ("In light of the fact that plaintiff's federal claims have been dismissed for lack of subject matter jurisdiction under Rule 12(b)(1), and as [plaintiff] has brought no other claims for federal relief, the Court will exercise its discretion to dismiss without prejudice [plaintiff's] pendent state law claims [under] 28 U.S.C. § 1367(c)(3).").

11

Because the Court dismisses the First Amended Complaint in its entirety, including as against Defendant George Deterville who has not been served and is the subject of Plaintiff's pending *Ex Parte* Motion for the Issuance of Letters Rogatory (ECF 11), that Motion is denied as moot.

This matter is therefore closed.  An appropriate Order will issue separately.

Date:  March 11, 2015